FILED
2024 Oct-22  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *U.S. Department of Justice, Disability* | ) | |
| *Rights Section*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-01001-NAD |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION ON ORDER
## DENYING PLAINTIFF'S MOTION TO AMEND

On October 8, 2024, the court denied Plaintiff United States of America's motion for leave to file an amended complaint (Doc. 18). Doc. 26 (text order). This memorandum opinion explains the court's reasoning.

## BACKGROUND

On July 31, 2023, the government filed its initial complaint against Defendant Alabama Department of Transportation (ALDOT), alleging violations of Title I of the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. §§ 12111–12117. Doc. 1 at 1, 8–9. The parties consented to magistrate judge jurisdiction. Doc. 12; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

On October 18, 2023, the court entered a scheduling order (Doc. 15), which

1

incorporated the parties' agreed-upon deadline of February 1, 2024, for the government to amend its pleading.  Doc. 15 at 1, 3–4; s*ee* Doc. 14 at 5.

On July 31, 2024 (i.e., more than five months after the government's February 1, 2024 deadline to amend had passed), the government filed a motion for leave to file an amended complaint.  Doc. 18.  The government attached to its motion a proposed amended complaint.  Doc. 18-1.

The parties fully briefed the motion.  *See* Doc. 19 (ALDOT opposition); Doc. 20 (government reply).  And, on September 23, 2024, the court held a motion hearing.  *See* minute entry, entered: 09/23/2024; Docs. 23, 24, 25 (orders setting hearing).

In its motion to amend, the government sought "to amend the Complaint to clarify that it alleges that Complainant meets the definition of disability generally, incorporating all prongs of the definition of disability."  Doc. 18 at 2; *see* 42 U.S.C. § 12102(1) ("The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . .").

The government argued in its motion that—as part of discovery in this case—the government had "learned new information about the Complainant's ability to meet the definition of disability under multiple prongs" through interviews with the

complainant's former coworkers, as well as the depositions of the complainant and two of the complainant's managers. *See, e.g.*, Doc. 18 at 2–3.

In its opposition, ALDOT argued that the motion to amend was "an untimely and poorly disguised attempt to assert new claims against ALDOT." Doc. 19 at 1. ALDOT argued that the government's "general citations to the ADA" in the initial complaint did not constitute "plausible pleading of three separate claims under the ADA's definition of disability." Doc. 19 at 3.[1]

ALDOT also argued that the government could not show the good cause or diligence that is required to amend under Federal Rule of Civil Procedure 16(b). Doc. 19 at 5–8. According to ALDOT, the government could have—and should have—learned of the purported newly discovered information before the deadline to amend had passed, because the government had "unlimited access to Complainant since 2021" and previously had interviewed both ALDOT managers in 2021, and because the government had not diligently pursued discovery with respect to the

---

[1] *See EEOC v. Allstate Bev. Co.*, No. 2:19-cv-657-WKW, 2023 WL 158211 at *2, 4 (M.D. Ala. Jan. 11, 2023) (reasoning that, "while the definition of disability is to be construed broadly, the plaintiff must plead enough facts that plausibly show which definition of disability applies to his ADA discrimination claim" (citation omitted), and that, "without plausible allegations identifying under which definition of disability the plaintiff is proceeding, a defendant will not have fair notice of what the plaintiff's claim is and the grounds upon which it rests" (quotation marks omitted)); *see also* Doc. 18 at 6 (government argument that, in light of *Allstate*, the government seeks to clarify its complaint in order "to ensure that the basis for its lawsuit is clear considering recent facts obtained in discovery by adding the complete definition of disability under the ADA to the Complaint").

complainant's former coworkers.  Doc. 19 at 5–7.

In its reply, the government argued that it had "made diligent efforts to contact" the complainant's former coworkers, and that—while the government did have access to the complainant and the two managers during its investigation of ALDOT—the recent depositions of the complainant and the two managers "provided even more new information that supported amending the complaint." Doc. 20 at 3–5.

The court denied the government's motion to amend on October 8, 2024.  Doc. 26 (text order).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15 (and aside from amendment as a matter of course), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1286 (11th Cir. 2015).

But, under Rule 16(b), "[a] plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause.'" *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009).

Rule 16(b)'s good cause standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension."  *Sosa v.*

*Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quotation marks omitted).

The Eleventh Circuit has instructed that "[t]he lack of diligence that precludes a finding of good cause is not limited to a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes. That lack of diligence can include a plaintiff's failure to seek the information it needs to determine whether an amendment is in order." *Southern Grouts*, 575 F.3d at 1241 n.3.

The Eleventh Circuit also has instructed that a court should not "consider whether amendment is proper under Rule 15(a)," if the plaintiff does not "first demonstrate good cause under Rule 16(b)." *Sosa*, 133 F.3d at 1419 (citations omitted) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").

## DISCUSSION

The government cannot show the good cause and diligence that Rule 16(b) requires in order to amend. *See* Doc. 26 (text order). As noted above, the government moved to amend on July 31, 2024 (Doc. 18), more than five months after the February 1, 2024 deadline to do so (*see* Doc. 15; Doc. 14), and one year after initiating this action (*see* Doc. 1). So, the parties agree that the government is required to show good cause for the proposed amended complaint under Rule 16(b).

*See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); Doc. 18-1.

Two preliminary matters:  First, it is difficult to see how the government could show the required good cause and diligence, given the government's argument that it always had intended—even in its initial complaint—to plead ADA claims against ALDOT under multiple prongs of the definition of disability.  *See, e.g.*, Doc. 20 at 5 (arguing that, based on "its pre-suit investigation," the government "believed [the complainant] could meet the definition of disability under multiple prongs of the definition of disability, and so the [government] cited to the definition of disability in full in its [initial] [c]omplaint" (citing Doc. 1 ¶ 38)).

Second, it is undisputed that the government here had access to the EEOC's investigatory file and materials since early 2021—i.e., before initiating this action in July 2023, and before discovery in this case commenced.  *See, e.g.*, Doc. 19 at 4 n.1; *see also Southern Grouts*, 575 F.3d at 1241 n.3 (The "lack of diligence that precludes a finding of good cause" can include "a plaintiff's failure to seek the information it needs to determine whether an amendment is in order.").

Regardless, the government has not shown that its motion to amend is "based upon newly discovered information" that "could not have been obtained any earlier despite [the government's] diligence" in discovery.  *See* Doc. 20 at 3.

Importantly, the government indicated to ALDOT on <u>July 2, 2024</u>, that the

government would seek to amend the complaint based on such newly discovered information.  *See* Doc. 19-2.  The government stated the following in an e-mail: "Based on information we have learned during discovery, the [government] believes we have reason to amend our Complaint."  Doc. 19-2 at 1–2.

As noted above, the government argues that it learned of this newly discovered information through the depositions of the complainant and two of the complainant's managers, and through interviews with the complainant's former coworkers.  Doc. 18 at 2–3, 5; Doc. 20 at 3–5 (similar).

But the depositions of the complainant and the two managers occurred from July 10 to July 12, 2024—*after* the government already had indicated to ALDOT on July 2, 2024, that it had newly discovered information based on which it would seek to amend the complaint.  *See, e.g.*, Doc. 20 at 4 & n.5.

Nevertheless, the government argues in its motion that it seeks to amend its complaint "to clarify" that the complaint includes an ADA claim that the complainant was "regarded as" having a disability by ALDOT.  Doc. 18 at 2; 42 U.S.C. § 12102(1)(C).[2]  The government argues that it learned in these depositions and interviews that "Complainant could effectively perform the Transportation

---

[2] In the motion hearing, the government argued that the proposed amended complaint also included a "record of" disability claim under 42 U.S.C. § 12102(1)(B).  But, practically speaking, neither party addressed any such purported claim in briefing or at oral argument.

Maintenance Technician [TMT] position without reasonable accommodations, that at least one hiring manager had worked with Complainant previously and knew about Complainant's injury, and that Complainant was 'regarded as' having a disability by [ALDOT] when he applied, within the meaning of 42 U.S.C. § 12102." Doc. 18 at 3.

The government also argues that it "has used discovery in this litigation to better understand, among other things, whether ALDOT contemplated accommodations for [the complainant], whether [the complainant] actually made use of any accommodations, and whether he would need any accommodations were he to be re-hired by ALDOT." Doc. 20 at 3.  The government argues further that it learned from the interviews with the complainant's former coworkers that the complainant "could do the job even without accommodation" (Doc. 20 at 4), that the depositions of the two managers "support that the decision-makers at ALDOT knew about [the complainant's] impairment when they interviewed him in 2018 and that they decided not to hire him because they 'regarded' him as having a disability" (Doc. 20 at 5), and that the government "learned through *its pre-suit investigation* that [the complainant] had an impairment following an injury on the job, but it was unclear the extent to which ALDOT offered or [the complainant] used accommodations offered over the course of his prior employment as a TMT" with ALDOT (Doc. 20 at 5 (emphasis added)).

But the government's initial complaint already includes allegations relating to all of this purported newly discovered information. *See Southern Grouts*, 575 F.3d at 1241 n.3 (The "lack of diligence that precludes a finding of good cause" can include "a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes.").[3]

Among other things, the government's initial complaint alleges the following: "[a]fter reviewing Complainant's permanent activity restrictions and discussing with Complainant the tasks he can perform, ALDOT ultimately accommodated his disability in the TMT I role" (Doc. 1 at 4); "Complainant continued working as a successful employee, regularly exceeding expectations in performance evaluations," and "Complainant's accommodations included relying on coworker help for lifting heavier objects, modifying the manner of performing some of his tasks, and more frequent rests, among others" (Doc. 1 at 4–5); "[e]ven with his disability, Complainant was eventually selected for a promotion to a TMT II based on his satisfactory performance with ALDOT," and "[h]is accommodations continued

---

[3] Generally speaking, "[a] plaintiff's request to amend [the] complaint based on facts already known to him before he filed suit indicates a lack of [the] diligence" required to satisfy the Rule 16(b) good-cause standard. *See, e.g.*, *Quinn v. Deutsche Bank Nat. Tr. Co.*, 625 F. App'x 937, 940 (11th Cir. 2015) (citing *Sosa*, 133 F.3d at 1419); *accord Pugh v. Kobelco Constr. Mach. Am., LLC*, 413 F. App'x 134, 136 (11th Cir. 2011) (affirming denial of leave to amend where "the proposed amendment was based on facts that were, or should have been, within [the plaintiff's] own knowledge" before the deadline to amend had passed).

while Complainant was a TMT II" (Doc. 1 at 5).

The government also alleged in the initial complaint that, "[i]n or around December 2017, Complainant sought to return to his former position as a TMT with ALDOT.  Complainant met with an ALDOT manager and discussed returning to the job.  This manager had worked with Complainant previously and was aware of his injury and accommodations that he received from ALDOT.  This manager was also one of the individuals who subsequently interviewed Complainant for the TMT position."  Doc. 1 at 5.  The initial complaint alleged further that "Complainant was interviewed by at least two ALDOT employees, including the manager he spoke with previously.  The second employee also knew that Complainant was injured during his previous employment with ALDOT."  Doc. 1 at 6.

The initial complaint alleged that, "[a]lthough the ALDOT interviewers were aware of Complainant's injury, they moved on without asking any questions about how Complainant could get the job done with or without reasonable accommodations" (Doc. 1 at 6), and that "ALDOT violated the ADA when it failed to hire Complainant due to his disability even though he was a qualified person with a disability who could perform the essential functions of the position he applied to, with or without reasonable accommodation" (Doc. 1 at 8).

In sum (and on top of the threshold issues discussed above, *see supra*), the government's "proposed amendment was based on facts that were, or should have

been, within [the government's] own knowledge" before the deadline to amend had

passed.  *See Pugh*, 413 F. App'x at 136.

Accordingly, the government has not shown the good cause and diligence that

Rule 16(b) requires in order to amend.  *See* Doc. 26 (text order).

**DONE** and **ORDERED** this October 22, 2024.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE