FILED
2025 Aug-15  AM 11:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>*U.S. Department of Justice, Disability* )<br>*Rights Section*, )<br> )<br>　　　Plaintiff, )<br> )<br>v. )<br> )<br>ALABAMA DEPARTMENT OF )<br>TRANSPORTATION, )<br> )<br>　　　Defendant. ) | Case No. 2:23-cv-01001-NAD |

## MEMORANDUM OPINION AND ORDER GRANTING
## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

For the reasons stated below and on the record in the oral argument motion hearing, the court **GRANTS** Defendant Alabama Department of Transportation's motion for summary judgment (Doc. 30), and **DENIES** Plaintiff United States of America's motion for summary judgment (Doc. 31). The court separately will enter final judgment.

## BACKGROUND

### A.    Procedural background

On July 31, 2023, the government initiated this action by filing a complaint against the Alabama Department of Transportation (ALDOT), alleging violations of Title I of the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C.

§§ 12111–12117.  Doc. 1 at 1, 8–9.  The parties consented to magistrate judge jurisdiction.  Doc. 12; 21 U.S.C. § 636(c); Fed. R. Civ. P. 73.

The government's complaint alleges a single "cause of action" for employment discrimination under Title I of the ADA.  Doc. 1 at 8–9.  The complaint alleges (1) that the "[c]omplainant is a person with a disability within the meaning of 42 U.S.C. § 12102 because he has an impairment, stemming from an injury, that substantially limits the major life activities of performing manual tasks and lifting, among others," that "ALDOT's conduct . . . constitutes discrimination on the basis of disability," and (2) that "ALDOT also violated the ADA by using qualification standards or other selection criteria that screened out an individual with a disability and that were not job-related or consistent with business necessity."  Doc. 1 at 8–9 (citing 42 U.S.C. § 12112; 42 U.S.C. §§ 12111–12117; 29 C.F.R. § 1630; 29 C.F.R. § 1630.2(g)).

On July 31, 2024, the government filed a motion for leave to file an amended complaint, seeking to clarify that the complaint included a "regarded as" disability discrimination claim, in addition to an "actual" disability discrimination claim—i.e., that ALDOT allegedly discriminated against the complainant because of his actual disability, and that ALDOT also allegedly discriminated against the complaint because ALDOT regarded the complainant as having a disability.  Doc. 18.  The parties fully briefed that motion.   Doc. 19 (ALDOT's opposition); Doc. 20

(government's reply).

After a motion hearing on September 23, 2024, the court denied the government's motion for leave to amend.  Doc. 26; Doc. 27; *see* minute entry, entered: 09/23/2024.

On November 22, 2024, the parties filed these cross-motions for summary judgment.  Doc. 30 (ALDOT); Doc. 31 (government).  *See* Doc. 35 (briefing schedule).

ALDOT filed its summary judgment motion (Doc. 30), with a supporting brief and evidentiary material (Doc. 33).  The parties fully briefed ALDOT's summary judgment motion.  Doc. 41 (government's opposition); Doc. 43 (ALDOT's reply).

Likewise, the government filed a brief in support of its summary judgment motion (Doc. 32), along with evidentiary material (Doc. 34).  *See* Doc. 31.  And the parties fully briefed the government's summary judgment motion.  Doc. 40 (ALDOT's opposition); Doc. 42 (government's reply).

In addition, on December 6, 2024, ALDOT filed a motion to strike portions of the government's summary judgment motion.  Doc. 37.  ALDOT argued that the government's summary judgment motion included "an improper attempt to enter through the back door what the Court ha[d] already ruled the Government could not enter through the front—amending its Complaint to add a new and unpled theory of liability based on [the complainant's] being regarded as disabled."  Doc. 37 at 2.  On

December 9, 2024, the government filed a response.  Doc. 38.

On December 10, 2024, the court denied ALDOT's motion to strike, and construed that motion as a brief both in support of ALDOT's pending summary judgment motion and in opposition to the government's pending summary judgment motion.  Doc. 39 (adjusting briefing schedule on cross-motions for summary judgment, and citing *EEOC v. Allstate Beverage Co.*, No. 2:19-cv-657-WKW, 2023 WL 158211 (M.D. Ala. Jan. 11, 2023)).

After the oral argument motion hearing on the parties' cross-motions for summary judgment, ALDOT filed a supplemental brief in support of its summary judgment motion.  Doc. 47; *see* minute entry, entered: 05/01/2025; Doc. 44 (order setting hearing); Doc. 45 (order resetting hearing).

### B.     Factual background

The following facts are undisputed:

The complainant—Ronald Davis—was employed by ALDOT from 1999 until he retired in February 2015.  Doc. 33-2 at 7, 15; Doc. 34-1 at 7, 15.  During his employment with ALDOT, Davis worked for ALDOT's maintenance department, which is responsible for maintaining state roadways.  Doc 33-2 at 18; Doc. 34-1 at 18.  While working for ALDOT, Davis initially was employed as a laborer, but later was promoted in 2000 to a Highway Maintenance Technician I (HMT-I).  Doc. 33-2 at 23; Doc. 34-1 at 23.  Davis's duties as an HMT-I included patching potholes,

picking up litter, removing dead animals, cutting trees, installing road signs, and cutting grass.  Doc. 33-2 at 16–18, 76; Doc. 33-8 at 5; Doc. 34-1 at 16–18; Doc. 34-2 at 7; Doc. 34-3 at 5.

While working on October 19, 2007, Davis fell off the back of a truck and injured his left shoulder.  Doc. 33-2 at 54; Doc. 34-1 at 4.  Davis underwent two surgeries to repair his torn rotator cuff.  Doc. 33-2 at 57–59; Doc. 34-1 at 57–59. Davis's first surgery was in December 2007, and his second surgery was in April 2008.  Doc. 33-2 at 57–59; Doc. 34-1 at 57–59.

In September 2008, Davis's doctor performed a Functional Capacity Evaluation (FCE), including a "Daily Tolerance Grid," and determined that Davis's shoulder had reached maximum medical improvement.  Doc. 33-10; Doc. 34-9.  The Daily Tolerance Grid showed that Davis could lift 35 pounds from the floor to his waist occasionally, and 17 pounds from the floor to his waist frequently.  Doc. 33-10 at 2; Doc. 34-9 at 13.  The Daily Tolerance Grid also showed that Davis could lift 3 pounds to head level with his left shoulder occasionally, 25 pounds overhead with his right shoulder occasionally, and 12 pounds overhead with his right shoulder frequently.  Doc. 33-10 at 2; Doc. 34-9 at 13.  The Daily Tolerance Grid showed no tasks that Davis never could do.  Doc. 33-10 at 2; Doc. 34-9 at 13.  On January 12, 2009, Davis returned to work with lifting restrictions consistent with his FCE.  Doc. 33-2 at 64; Doc. 34-1 at 64.  After returning to work, Davis did not consult with a

physician again for his shoulder.  Doc. 33-2 at 8; Doc. 34-1 at 8.  Davis retired from ALDOT in February 2015.  Doc. 33-2 at 7; Doc. 34-1 at 7.

Less than a year after his retirement from ALDOT, Davis began working at Hoover Toyota as a valet driver.  Doc. 33-2 at 7; Doc. 34-1 at 7.  While working at Hoover Toyota, Davis's duties included parking cars, running errands, and loading and unloading tires and automobile parts.  Doc. 33-2 at 6–7; Doc. 34-1 at 6–7. at 9.  Davis worked at Hoover Toyota for approximately 5 years before he was laid off due to the pandemic.  Doc. 33-2 at 8; Doc. 34-1 at 8.

On December 14, 2017, Davis applied for a full-time Transportation Maintenance Technician I (TMT-I) position with ALDOT.[1]  Doc. 33-12; Doc. 34-15 at 6–9.  In February 2018, a panel of three ALDOT employees, including Derek Blankenship and Todd Connell, interviewed Davis for the TMT-I position.  Doc. 33-8 at 26–27; Doc. 34-3 at 26–27.  Davis was not selected for the position.  Doc. 33-2 at 77; Doc. 34-1 at 77.  Notes from Davis's interview and analysis stated:  "Can't lift 50 lbs."  Doc. 32 at 13; Doc. 34-15 at 10; *see* Doc. 40 at 18; Doc. 34-2 at 33; Doc. 34-3 at 31.

On September 28, 2018, Davis filed a charge with the Equal Employment Opportunity Commission (EEOC).  Doc. 33-2 at 73; Doc. 34-1 at 73.

---

[1] In 2007, ALDOT changed the HMT-I title to TMT-I, but the job duties remained the same.  Doc. 33-8 at 45; Doc. 34-3 at 45.

### C.    Legal background

#### 1.    Disability discrimination

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112.  The parties do not dispute that ALDOT is a covered entity under the statute.

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show:  (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability."  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007).

For purposes of the ADA, disability is defined as "a physical or mental impairment that substantially limits one or more life activities," "a record of such impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(1).

#### 2.    Pleading requirements

Federal Rule of Civil Procedure 8 requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  According to the U.S. Supreme Court, "[d]etailed factual

allegations are not required, but [Rule 8] does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (cleaned up) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

In the employment context, the Supreme Court has required that the complaint "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 535 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Twombly*, 550 U.S. at 555 (Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2) and *Conley*, 355 U.S. at 47; ellipsis omitted)).

On a claim for employment discrimination in the disability context (and consistent with the plain language of the ADA), "a plaintiff must allege facts to show the plaintiff has a disability in one of the three ways defined by the ADA." *EEOC v. Allstate Beverage Co.*, No. 2:19-cv-657-WKW, 2023 WL 158211, at *3 (M.D. Ala. Jan. 11, 2023) (discussing *Andrews v. City of Hartford*, 700 F. App'x 924 (11th Cir. 2017), and "post-*Twombly* district court decisions").

8

"[W]ithout plausible allegations identifying under which definition of disability the plaintiff is proceeding, a defendant will not have fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Allstate Beverage*, 2023 WL 158211, at *4 (quoting *Swierkiewicz*, 534 U.S. at 512; quotation marks omitted); *see Andrews*, 700 F. App'x at 926–27 (11th Cir. 2017) (holding that the plaintiff did not adequately plead a "regarded as" disability claim because he did not allege facts showing that the defendant engaged in discrimination, or that his disability was a determinative factor in the defendant's decision to terminate his employment).

In this regard, fact allegations "must be sufficient to raise the right to relief above the speculative requirement." *Andrews*, 700 F. App'x at 925 (citing *Twombly*, 550 U.S. at 555). And, "[t]o meet this requirement, the plaintiff's factual allegations cannot simply be consistent with the defendant's liability; rather they must be sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id*. (citing *Iqbal*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [the claim] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))); *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."

(quoting *Twombly*, 550 U.S. at 557; quotation marks omitted)).

Moreover, "a complaint 'may not be amended' in summary judgment briefing." *Allstate Beverage*, 2023 WL 158211, at *5 (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2] And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To avoid summary judgment, the nonmovant must go beyond mere allegations to offer specific facts creating a genuine dispute for trial. *Celotex*, 477 U.S. at 324–25. The court's responsibility is not to "weigh the evidence and

---

[2] *Accord, e.g.*, *Celotex*, 477 U.S. at 322–23 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  The court must construe all evidence and draw all reasonable inferences in the nonmovant's favor. *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c).

## DISCUSSION

### I. There is no genuine dispute of material fact for trial on the government's employment discrimination claim based on an alleged actual disability.

There is no fact issue for trial on the government's employment discrimination claim based on Davis's alleged actual disability.  The record evidence is insufficient for a jury to find or reasonably infer that Davis was actually disabled when he applied for the TMT-I position with ALDOT in 2017 and then interviewed for the position in 2018.

The ADA, including the ADA Amendments Act of 2008, defines "actual disability" as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12012(1)(A).

By regulation, a physical impairment is "any physiological disorder or condition . . . affecting one or more of the body systems, such as . . . musculoskeletal."  29 C.F.R. § 1630.2(h)(1).  A physical impairment is an actual disability "if it substantially limits the ability of an individual to perform a major life

activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Major life activities include performing manual tasks, lifting, and working. 29 C.F.R. § 1630.2(i)(1)(i). "[T]he definition of 'disability' shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA," and "[t]he question of whether an individual meets the definition of disability . . . should not demand extensive analysis." 29 C.F.R. § 1630.1(c)(4). *But see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) ("'[I]t is emphatically the province and duty of the judicial department to say what the law is.'" (quoting *Marbury v. Madison*, 1 Cranch 137, 177, 2 L. Ed. 60 (1803))).

Importantly, "the relevant time period for assessing the existence of a disability, so as to trigger the ADA's protections, is the time of the alleged discriminatory act." *EEOC v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019).

Relying on Davis's deposition testimony, ALDOT argues that Davis "candidly admitted he was not actually disabled when he applied for the TMT I position in 2017 and/or when he interviewed for the position in 2018." Doc. 33 at 11.

For instance, Davis testified that, when he interviewed with ALDOT in February 2018, he "was in fairly good shape." Doc. 34-1 at 80. He testified, "I don't remember anything disability wise." Doc. 34-1 at 80. Davis also testified that in February 2018 he "did not have a disability. All [he] had was what was left from

. . . this shoulder injury."  Doc. 34-1 at 81.

Davis's employment at Hoover Toyota was the work nearest in time to his application with ALDOT in 2017 and interview in 2018.  Davis acknowledged in his deposition that, after he retired from ALDOT in 2015 and while he then was working at Hoover Toyota for approximately 5 years beginning in 2016, he did not "have any physical restrictions at that time," he was not "under any doctor's orders about lifting restrictions or anything affecting [his] functions related to [his] shoulder," there were "no physical duties associated with the valet position that [he was not] able to do because of [his] prior shoulder injury," and he "carried out every job assignment [he] had."  Doc. 34-1 at 7–8.  Davis also acknowledged that he "never had any reason to mention to anyone at Hoover Toyota that [he] had any prior physical limitations or injuries."  Doc. 34-1 at 8.

Davis testified further that, at the time he applied for the TMT-I position in 2017, he had no "physical restrictions" and no "lifting restrictions," and was able to lift 50 pounds up to waist level.  Doc. 34-1 at 43.  And, at the time of his deposition in July 2024, Davis acknowledged that he did not "have any current restrictions based on [his] shoulder."  Doc. 34-1 at 5.  When asked whether he "can lift and reach with full capacity and range of motion," Davis answered, "I haven't been tested, but as far as I know I do what I need to do . . . as things around the house and all of that."  Doc. 34-1 at 5.

Davis's own deposition testimony is compelling evidence that he was not actually disabled at the time that he applied for the position with ALDOT in 2017 and interviewed for the position in 2018. *See, e.g.*, *Garavito v. City of Tampa*, 640 F. Supp. 2d 1376, 1380 (M.D. Fla. 2009) (holding that the plaintiff who testified that epilepsy never had affected any activity in her life was not disabled under the ADA); *Sicilia v. UPS, Inc.*, 279 F. App'x 936, 938 (11th Cir. 2008) (holding that a plaintiff's epilepsy, by his own admission, did not substantially limit a major life activity); *May v. American Cast Iron Pipe Co.*, No. 2:12-CV-0285-SLB, WL 1043440, at *6 (N.D. Ala. March 17, 2014) ("Plaintiff's amended Complaint states only that he was injured on the job and, as a result, he has permanent lifting restrictions. He does not describe his injury, the resulting permanent restrictions, or how these restrictions limit one or more of his major life activities." (citation omitted)).

While that testimony from Davis alone is compelling, it still may not be dispositive under different circumstances. In light of Davis's testimony (as discussed both above and below), what's dispositive in this case is the lack of record evidence based on which a reasonable jury could find or infer that Davis had a physical "impairment that substantially limit[ed] one or more major life activities" when he applied with ALDOT in 2017 and interviewed in 2018. *See* 42 U.S.C. § 12012(1)(A). The only record evidence from that time period is Davis's testimony that he was not disabled and his testimony about his work at Hoover Toyota, as to

which he appears in relevant part to have been neither impaired nor limited in any way. *See STME*, 938 F.3d at 1314 ("[T]he relevant time period . . . is the time of the alleged discriminatory act.").

On the other hand, even construing all evidence and reasonable inferences in the government's favor, the only record facts that the government can identify to show that Davis was actually disabled in 2017–18 appear to be the September 2008 Functional Capacity Evaluation (FCE) and "Daily Tolerance Grid," which said that Davis had a "permanent" restriction (almost 10 years before his application and interview with ALDOT), and vague testimony about Davis's injury before 2017–18 (and before his work at Hoover Toyota).

The government argues that Davis was actually disabled for purposes of the ADA because Davis had "permanent impairment of his musculoskeletal functioning" as a result of his shoulder injury. Doc. 32 at 18. For fact support, the government relies on Davis's worker's compensation records and the 2008 FCE and Daily Tolerance Grid. Doc. 34-9. Specifically, a letter dated September 29, 2008, notified ALDOT that Davis had "reached Maximum Medical Improvement (MMI) and [had] permanent activity restrictions." Doc. 34-9 at 14. And Davis's Daily Tolerance Grid dated September 5, 2008, showed that Davis could occasionally lift 35 pounds from floor to waist, frequently lift 17 pounds from floor to waist, occasionally lift 3 pounds from waist to head level with his left shoulder,

occasionally lift 25 pounds from waist to overhead with his right shoulder, and frequently lift 12 pounds from waist to overhead with his right shoulder.  Doc. 34-9 at 13.  Davis's Daily Tolerance Grid showed no tasks that Davis never could do. Doc. 34-9 at 13.

But the notation of those restrictions as "permanent" is from documents created in 2008.  Davis testified that, after 2008, he "never did go back to the doctor" for his shoulder injury.  Doc. 34-1 at 8.

Davis testified that, when he retired from ALDOT in 2015, he "didn't have any lifting restrictions."  Doc. 34-1 at 7.  Davis also testified that, when he retired from ALDOT in 2015, he "had them [i.e., the restrictions] but never . . . had to . . . use them."  Doc. 34-1 at 8.

Again (as discussed above, *see supra*), the only evidence from Davis's time working at Hoover Toyota for 5 years beginning in 2016 is that Davis did not have any physical restrictions, was not under any doctor's orders about lifting restrictions, carried out every job assignment he had, and never had any reason to mention to anyone at Hoover Toyota that he had any prior physical limitations or injuries.  Doc. 34-1 at 8.

The government also relies on deposition testimony from Derek Blankenship, one of the ALDOT employees who interviewed Davis for the TMT-I position in 2018.  When asked about Davis's shoulder use prior to Davis's retirement from

ALDOT in 2015, Blankenship testified that Davis "couldn't lift the arm, so he would have to use his other one more frequently."  Doc. 34-3 at 19.  Blankenship also testified that he "[didn't] know about weight-lifting, but [Davis's] rotation was hindered.  He couldn't lift his arms all the way up."  Doc. 34-3 at 19.  Blankenship testified further that he saw Davis using his shoulder differently "[s]ometime when he came back" to work after his injury, and that he did not believe Davis's shoulder use "really changed" between the time Davis returned to work after his injury and his retirement from ALDOT in 2015.  Doc. 34-3 at 19.

Nevertheless, Davis testified that before he retired from ALDOT in 2015 he "never [had] a problem with getting the job done."  Doc. 34-1 at 51.

Even assuming that Blankenship's testimony could show some restriction before Davis's retirement from ALDOT in 2015, there is no evidence that Blankenship "had any interactions with [Davis] between 2015 and 2018."  Doc. 34-3 at 24.

Moreover, even for the time period from 2008 until 2015, Blankenship's testimony is too vague a basis for any jury to find or infer that Davis had a physical "impairment that substantially limit[ed] one or more major life activities."  *See* 42 U.S.C. § 12012(1)(A).  Among other things, to the extent that the government seeks to rely on the regulation, nothing in Blankenship's testimony shows that Davis's shoulder injury limited his ability "to perform a major life activity as compared to

17

most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

Similarly, the government relies on Davis's testimony that, when he retired from ALDOT in 2015, he "didn't have any lifting restrictions," he "just had a percentage of [his] shoulder [that] wasn't working properly." Doc. 34-1 at 7. But, just like Blankenship's testimony, this evidence is too vague (and remote in time). Whatever may have been the "percentage" of Davis's shoulder that was not working properly from 2008 until 2015, no reasonable jury could find or infer on this basis that Davis's shoulder injury limited his ability to perform a major life activity—as compared to most people in the general population, or otherwise. *See* 42 U.S.C. § 12012(1)(A); 29 C.F.R. § 1630.2(j)(1)(ii).

Thus, based on the record evidence, it would be impermissibly speculative for any jury to find or infer that, when he applied with ALDOT in 2017 or interviewed in 2018, Davis had a physical "impairment that substantially limit[ed] one or more major life activities." *See* 42 U.S.C. § 12012(1)(A); *accord Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (reasoning in an ADA employment discrimination case that "unsupported speculation does not meet a party's burden of producing some defense to a summary judgment motion," and that "[s]peculation does not create a *genuine* issue of fact" (cleaned up; emphasis in original; citation omitted)).

**II.    The government did not plead a discrimination claim based on "regarded as" disability.**

The government's complaint did not adequately plead a claim for "regarded as" disability discrimination. *See* Doc. 1. As a threshold matter, there is no dispute that the government adequately has *pleaded* an employment discrimination claim based on Davis's alleged actual disability. *See supra* Part I.

At this summary judgment stage, the government argues that the complaint alleges that ALDOT discriminated against Davis not just because Davis had "a physical or mental impairment that substantially limit[ed] one or more major life activities" (i.e., actual disability), but also because ALDOT "regarded" Davis as having such a disabling "impairment" (i.e., regarded as disability). *See* 42 U.S.C. § 12102(1).

But the government has not plausibly pleaded a regarded as disability claim. *See, e.g.*, *Allstate Beverage*, 2023 WL 158211, at *5 (granting the defendant's summary judgment motion, and reasoning that "[a]n ADA discrimination claim based on a regarded-as disability is not before the court because the EEOC did not plead it").

Not to be reductive, but the complaint does not even include the words "regarded as." *See* 42 U.S.C. § 12102(1)(C). While Rule 8 does "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," the complaint still must "give the defendant fair notice of what

the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation and quotation marks omitted). With respect to any regarded as disability claim, the government's complaint does not give ALDOT that required notice, and does not include fact allegations sufficient to state a plausible claim for relief.

Instead, the complaint repeatedly recites the plain text statutory language for an actual disability claim: "a physical or mental impairment that substantially limits one or more major life activities of such individual." *See* 42 U.S.C. § 12102(1)(A). The complaint alleges that Davis "is a person with a disability within the meaning of 42 U.S.C. § 12102 because he has an impairment, stemming from an injury, that substantially limits the major life activities of performing manual tasks and lifting, among others." Doc. 1 at 8 (citing 29 C.F.R. § 1630.2(g)). The complaint also alleges that Davis is "an individual with a disability within the meaning of 42 U.S.C. § 12102 because he has permanent physical restrictions because of a shoulder injury, which substantially limits the operation of one or more major life activities." Doc. 1 at 3 (citing 29 C.F.R. § 1630.2(i)(l)(i)–(ii)).

The complaint does cite generally to 42 U.S.C. § 12102 for the definition of disability, and not subsection (1)(A) (actual disability) or (1)(C) (regarded as disability). But only a discrimination claim based on an alleged actual disability under subsection (1)(A) requires fact allegations of a "physical or mental impairment that substantially limits one or more major life activities." *See* 42 U.S.C.

20

§ 12102(1)(A); Doc. 1 at 3, 8.

Likewise, the complaint cites directly to 29 C.F.R. § 1630.2(i)(1)(i)–(ii) ("Major life activities"), along with the allegation that Davis "has permanent physical restrictions because of a shoulder injury, which substantially limits the operation of one or more major life activities or major bodily functions, including manual tasks, lifting, and musculoskeletal functions" (Doc. 1 at 3). Those regulatory subsections define major life activities, as applied only in claims alleging an actual disability. 29 C.F.R. § 1630.2(i)(1)(i)–(ii).

In addition, the complaint includes several allegations about the accommodations ALDOT made for Davis's alleged actual disability. But "an employer does not owe a reasonable accommodation to an individual claiming ADA protection only under the regarded-as definition." *Allstate Beverage*, 2023 WL 158211, at *3 (citing 42 U.S.C. § 12201(h)).

For example, the complaint alleges that "ALDOT ultimately accommodated [Davis's] disability in the TMT I role" (Doc. 1 at 4), that Davis's "accommodations included relying on coworker help for lifting heavier objects, modifying the manner of performing some of his tasks, and more frequent rests, among others" (Doc. 1 at 5), that Davis's "accommodations continued while [he] was a TMT II" (Doc. 1 at 5), that an ALDOT "manager had worked with [Davis] previously and was aware of his injury and accommodations that he received from ALDOT" (Doc. 1 at 5), and

that the ALDOT interviewers "moved on without asking any questions about how [Davis] could get the job done with or without reasonable accommodations" (Doc. 1 at 6). The complaint also alleges that "ALDOT violated the ADA when it failed to hire [Davis] due to his disability even though he was a qualified person with a disability who could perform the essential functions of the position he applied to, with or without reasonable accommodation." Doc. 1 at 8 (citing 42 U.S.C. § 12112; 29 C.F.R. § 1630).

Even if some of the fact allegations in the complaint could be consistent with a discrimination claim based on both an alleged actual disability and alleged regarded as disability, the Supreme Court has been clear that, without more, those allegations cannot state a plausible claim for regarded as disability: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotation marks omitted); *Twombly*, 550 U.S. at 557 (similar); *see also Andrews*, 700 F. App'x at 925 (similar; citing *Iqbal*, 556 U.S. at 678).

Indeed, the fact allegations in the complaint address the physical impairments and limitations that allegedly resulted from Davis's shoulder injury. For instance, the complaint alleges that Davis "was thrown off the back of a truck while working as a TMT for ALDOT, and his shoulder was injured" (Doc. 1 at 4), and that Davis

"required multiple surgeries that permanently affected his ability to lift heavy objects for a long time" (Doc. 1 at 4).

Furthermore, even construing all fact allegations and reasonable inferences in the government's favor, the complaint cannot allege a plausible regarded as disability claim based on allegations that ALDOT knew of or was aware of Davis's injury. *See, e.g.*, Doc. 1 at 5 ("This manager had worked with [Davis] previously and was aware of his injury and accommodations that he received from ALDOT."); Doc. 1 at 6 ("The second employee also knew that [Davis] was injured during his previous employment with ALDOT."); Doc. 1 at 6 ("Although the ALDOT interviewers were aware of [Davis's] injury . . . .").

Again (as discussed above), it is not enough for fact allegations just to be consistent with a discrimination claim based on alleged regarded as disability. *See, e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557; *Andrews*, 700 F. App'x at 925. And (in any event), this court agrees with the conclusion of the Southern District of Alabama that an allegation of defendants' knowledge or awareness—such as "'Defendants were fully aware of the Plaintiff's disability'"—"is conceptually and logically distinct from a legal theory that defendants are liable because they regarded him as disabled." *Gordon v. Board of Sch. Comm'rs of Mobile Cty.*, No. CIV.A. 09-0797-WS-C, 2011 WL 773033, at *5 n.13 (S.D. Ala. March 1, 2011).

In sum, the complaint does not include fact allegations that state a plausible

claim for employment discrimination based on regarded as disability.  *See, e.g.*, *Iqbal*, 556 U.S. at 663.  There may not be much missing, but what is missing leaves ALDOT without the required notice, and the government without an adequately pleaded regarded as claim.  *See, e.g.*, *Swierkiewicz*, 535 U.S. at 512; *Twombly*, 550 U.S. at 555.

### III.    Because there is no triable issue on the government's disability discrimination claim, there can be no triable issue on the government's "screen out" claim.

Because there is no jury issue on the government's disability discrimination claim, there can be no jury issue on the government's "screen out" claim.  The complaint alleges that ALDOT "violated Title I of the ADA by using qualification standards and selection criteria that screened out [Davis] based on his disability and that were not job-related or consistent with business necessity."  Doc. 1 at 2; *see also* Doc. 1 at 9 (similar).

The ADA prohibits disability discrimination in "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities."  42 U.S.C. § 12112(b)(6).  Generally speaking, to prove a screen out claim under § 12112(b)(6), a plaintiff must (1) identify the challenged employment practice or policy, (2) demonstrate that the practice or policy had an adverse impact on the plaintiff with a disability, and (3) demonstrate a causal relationship between the identified

practice and the adverse impact.  *EEOC v. Dolgencorp, LLC*, No. 2:17-CV-01649-MHH, 2022 WL 2959569, at *9 (N.D. Ala. July 26, 2022).

In this regard, the parties agree that the government cannot get its screen out claim to a jury without a triable issue on whether Davis is an "individual with a disability."  *See* 42 U.S.C. § 12112(b)(6).

But (as discussed above), there is no genuine dispute of material fact for trial on the government's actual disability claim, and the government did not plead a regarded as disability claim.  *See supra* Parts I & II.  So the government's screen out claim likewise cannot get to a jury.

## CONCLUSION

For the reasons stated above, ALDOT's summary judgment motion (Doc. 30) is **GRANTED**.  The government's summary judgment motion (Doc. 31) is **DENIED**.  The government's claims are **DISMISSED WITH PREJUDICE**.

Separately, the court will enter final judgment.

**DONE** and **ORDERED** this August 15, 2025.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE